

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 11, 2013**

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **JOHN GIDNER,** | § | **CASE NO. 13-31303-BJH** |
| | § | **(Chapter 7)** |
| Debtor. | § | |
| _____ | § | |
| **JOHN GIDNER,** | § | |
| | § | |
| | § | **ADV. PROC. NO. 13-03138-BJH** |
| Plaintiff, | § | |
| | § | **Related to Dkt. No. 8** |
| v. | § | |
| | § | |
| **JPMORGAN CHASE BANK N.A.,** | § | |
| **RAYMOND JAMES AND ASSOCIATES,** | § | |
| **INC., and UNITED STATES OF** | § | |
| **AMERICA,** | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

## MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES OF AMERICA'S MOTION TO DISMISS BASED ON FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Before the Court is the Motion to Dismiss Based on Failure to State a Claim Upon Which Relief May Be Granted (the "**Motion**") [Dkt. No. 8] filed by defendant the United States of America ("**U.S.**"). Although the U.S. filed the Motion with reference to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012, each party submitted supplemental materials to this Court. Accordingly, at the hearing held on August 21, 2013 (the "**Hearing**"), the parties and the Court agreed that the Motion is more properly treated as a motion for summary judgment under Fed. R. Civ. P. 56, as incorporated by Fed. R. Bankr. P. 7056. At the conclusion of the Hearing, the Court requested supplemental briefs from the parties on several issues. By agreement of the parties, the last of these briefs was filed on September 18, 2013, and the Motion is now ripe for ruling. For the reasons set forth in detail below, the Motion is granted.

## I.    SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, a court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56). In deciding whether a fact issue has been raised, the facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). A court's role at the summary judgment stage is not to weigh the evidence or determine the truth of the matter, but rather to determine only whether a genuine issue of material fact exists for trial. *Peel & Co., Inc. v. The Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001) ("the court must review all of the evidence

in the record, but make no credibility determinations or weigh any evidence") (citing *Reeves v. Sanderson Plumbing Prods, Inc.,* 530 U.S. 133, 135 (2000)); *see also U.S. v. An Article of Food Consisting of 345/50 Pounds Bags*, 622 F.2d 768, 773 (5th Cir. 1980) (the court "should not proceed to assess the probative value of any of the evidence...."). While courts must consider the evidence with all reasonable inferences in the light most favorable to the non-movant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pylant v. Hartford Life and Acc. Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

After the movant has presented a properly supported motion for summary judgment, the burden then shifts to the nonmoving party to show with "significant probative evidence" that there exists a genuine issue of material fact. *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted). However, where "the burden at trial [as to the material fact at issue] rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## II.   FACTUAL AND PROCEDURAL HISTORY

On January 16, 2002, the U.S. obtained a judgment against Deborah C. Gidner (then Deborah C. Ingleman ("**Ingleman**")) in criminal case number 3:01-CR-268-01, U.S. District Court, Northern District of Texas, Dallas Division (the "**District Court**"). U.S. App. 00001-00005 [Dkt. 10-1] (the "**Criminal Judgment**"). Included within the Criminal Judgment is a

section titled "Special Conditions of Supervision," which requires Ingleman to pay restitution in the amount of $174,567 pursuant to the Mandatory Victim Restitution Act of 1996 (the "**MVRA**"). U.S. App. 00004 [Dkt. 10-1]. The U.S. filed a notice of lien regarding the Criminal Judgment in the Dallas County Clerk's Office on March 25, 2002. U.S. App. 00001-00002 [Dkt. 21-1]. On December 31, 2008, after plaintiff John Gidner ("**Gidner**") and Ingleman were married, the U.S. filed a second notice of lien regarding the Criminal Judgment with the Dallas County Clerk's Office to reflect Ingleman's married name (Deborah C. Gidner). U.S. App. 00003-00004 [Dkt. 21-1]. The two notices are collectively referred to herein as the "**Lien Notice**."

The U.S. filed an application for Writ of Garnishment against Ingleman on May 22, 2012, seeking to garnish Ingleman's property as payment for the debt owing under the Criminal Judgment. *See Order*, Case 12-cv-01597-B, Dkt. 43, at 1-2 (the "**Order Denying New Trial**") [Dkt. 19-2]. The District Court issued an Order for Issuance of Writ of Garnishment on August 30, 2012, and then issued a Writ of Garnishment on each of Edward D. Jones & Co. LP,[1] JPMorgan Chase Bank, N.A. ("**Chase**"), and Raymond James Financial Services, Inc. ("**RJFS**"). The Writs of Garnishment were answered by the relevant garnishees in early October 2012. *Id.* at 2. Chase answered the writ stating that it held one checking account in Gidner's name. U.S. App. 00012-00015 [Dkt. 10-1]. RJFS answered stating that it held two IRA accounts and one retail brokerage account in Gidner's name. U.S. App. 00016-00020 [Dkt. 10-1].

On October 26, 2012, Gidner filed an Objection to the Writ of Garnishment and Request for Hearing, requesting a hearing pursuant to 28 U.S.C. § 3205(c)(5) and alleging that he

---

[1] Edward Jones answered that it did not hold any property for Ingleman and/or Gidner, so the U.S. moved the District Court to quash the writ. Final Order of Garnishment at 2.

personally owes no debt to the U.S. and that the garnished bank accounts are his separate property.  Gidner App. 008-009 [Dkt. 18-1].

On March 7, 2013, without further hearing, the District Court entered a Final Order of Garnishment ordering that: (1) Chase pay to the U.S. all funds held in Chase Checking Account No. X4533, and (2) that RJFS and James Financial Services, Inc. liquidate to the extent necessary and pay to the U.S. one-half of IRA Acct. No. X8280, one-half of IRA Acct. No. X3008, and one-half of Retail Brokerage Acct. No. X1329.  U.S. App. 00022-00023 [Dkt. 10-1].  The funds ordered to be paid to the U.S. pursuant to the Final Order of Garnishment are referred to herein as the "**Garnished Funds**."

Prior to payment of the Garnished Funds, however, Gidner filed for relief under Chapter 7 of the Bankruptcy Code on March 11, 2013 (the "**Bankruptcy Petition Date**"), which commenced the case styled *In re Gidner*, 13-31303-BJH (the "**Bankruptcy Case**").  In his Schedule C, Gidner lists the funds held by Chase, RJFS, and James Financial Services, Inc. as exempt.  Bankr. Case No. 13-31303, Dkt. No. 17, p. 7.

Gidner then filed a Motion for New Trial with the District Court on April 3, 2013, arguing that the District Court was statutorily required to hold the hearing requested by Gidner pursuant to 28 U.S.C. § 3205(c).   *See* Order Denying New Trial [Dkt. 19-2] at 2.  Gidner's motion was denied by the District Court on June 26, 2013.  *Id.*  In its Order Denying New Trial, the District Court found that Gidner had not made an objection within the scope of 28 U.S.C. § 3205(c)(5), nor had he followed proper procedure, so the mandatory hearing requirement was never implicated.  *Id.* at 6-7.  As of the date of this Memorandum Opinion and Order, the District Court's Final Order of Garnishment and Order Denying New Trial are on appeal to the Fifth Circuit Court of Appeals.  *See U.S. v. John Gidner*, Case No. 13-10798.

Gidner filed his Plaintiff's Original Complaint (the "**Complaint**") [Dkt. 1] on June 18, 2013, seeking the following relief:[2]

Count I – Avoidance of Lien Pursuant to § 522(f), seeking to avoid any lien alleged against Garnished Funds claimed as exempt on Gidner's Schedule C;

Count II – Avoidance of Preferential Transfer Pursuant to 11 U.S.C. § 547;

Count III – Avoidance, Preservation, and Return of [Property Transferred or Lien Avoided] Under 11 U.S.C. §§ 522, 547, 550, and 551;[3]

Count IV – Declaratory Relief, specifically a declaration that "[p]ursuant to §522(c) of the Code, property exempted in this case pursuant to which a garnishment lien was avoided, is not liable during or after the case for any debt of the Debtor that arose, or that is determined under §502 of the Code as if such debt had arisen, before the commencement of the case;" and

Count V – Recovery of Attorneys' Fees.[4]

The U.S. responded to the Complaint by filing the Motion on July 24, 2013 [Dkt. 8]. In the Motion, the U.S. alleges that: (1) the prepetition entry of the Final Order of Garnishment divested Gidner of any interest he held in the Garnished Funds for exemption purposes, and (2) it held a perfected lien in the Garnished Funds since September 28, 2012,[5] which is outside the reach-back period found in 11 U.S.C. § 547 and makes both 11 U.S.C. §§ 544 and 547 inapplicable to the facts here.

[2] At the Hearing, Gidner's counsel withdrew the Count VI claim for injunctive relief due to imposition of the automatic stay, which would prevent the actions Gidner sought to enjoin. As such Count VI is not addressed in this Memorandum Opinion and Order.

[3] Count III of the Complaint is formally titled "Avoidance, Preservation, and Return of Constructively Fraudulent Transfers Under 11 U.S.C. §§ 522, 547, 550, and 551." At the Hearing, Gidner's counsel clarified that the Complaint was not seeking to recover constructively fraudulent transfers, but was only seeking the return of any avoided transfers and/or the preservation of any avoided liens.

[4] The relief sought by Gidner in Counts III through V derives from his alleged rights in the Garnished Funds, as pleaded in Counts I and II. As such, Counts III through V are not separately analyzed in this Memorandum Opinion and Order, but those claims fail as a matter of law too in light of the disposition of the Count I and II claims.

[5] The U.S. subsequently argued in its post-Hearing brief that the perfection date was actually March 25, 2002. United States of America's Brief in Response to Hearing Held August 21, 2013 [Dkt. 20] at 7-8.

## III.   ISSUES PRESENTED

### A.   What Was the Status of the Restitution Lien as of the Bankruptcy Petition Date?

i.   <u>The Restitution Lien Against Ingleman's Property Attached Upon Entry of the Criminal Judgment.</u>

An order of restitution made pursuant to the MVRA "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986 [the "**IRC**"]." 18 U.S.C. § 3613(c). The lien arises upon entry of the judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or the defendant dies. 18 U.S.C. § 3613(b), (c).

The Criminal Judgment directing Ingleman to make restitution payments pursuant to the MVRA was entered on January 16, 2002. U.S. App. 000001-00005 [Dkt. 10-1]. Accordingly, the Court concludes that the U.S. holds a lien against all of Ingleman's property interests (the "**Restitution Lien**") that attached upon entry of the Criminal Judgment on January 16, 2002. *See* 18 U.S.C. § 3613(c). Gidner does not dispute this point. *See* Plaintiff's Post-Hearing Brief [Dkt. 19] at ¶ 56.

ii.   <u>The Restitution Lien was Perfected Against Ingleman's Property Upon Filing of the Lien Notice on March 25, 2002.</u>

Pursuant to 18 U.S.C. § 3613(d), "[u]pon the filing of a notice of lien in the manner in which a notice of tax lien would be filed under section 6323(f)(1) and (2) of the Internal Revenue Code of 1986, the lien shall be valid against any purchaser, holder of a security interest, mechanic's lienor or judgment lien creditor…." 18 U.S.C. § 3613(d). IRC § 6323(f)(1) states that a notice of tax lien filed against personal property is to be filed "in one office within the State…as designated by the laws of such State." 26 U.S.C. § 6323(f)(1)(A). Pursuant to IRC § 6323(f)(2), personal property is deemed situated at the residence of the taxpayer at the time the

lien was filed.  26 U.S.C. § 6323(f)(2)(B).  Finally, in Texas, notices regarding personal property liens against individuals must be filed "in the office of the county clerk in the county where the person against whose interest the lien applies resides at the time of the filing of the notice of lien." Tex. Prop. Code § 14.002(c).

Based upon these statutes, the parties agree that the Lien Notice was correctly filed with the Dallas County Clerk's Office.  *See* United States of America's Brief in Response to Hearing Held August 21, 2013 [Dkt. 20] at 7 ("So now the Internal Revenue Service files one notice of lien in the consolidated property records in Dallas County, which perfects its lien against all real property of the individual located in the county and all personal property of the individual residing in that county) (citing to Tex. Prop. Code Ann. § 14.002)); Plaintiff's Post-Hearing Brief [Dkt. 19] at ¶¶ 56-61 (analyzing statutes regarding lien filing requirements and then challenging the form, but not the location of filing, of the Lien Notice).

Gidner does argue, however, that the U.S. nonetheless failed to properly perfect the Restitution Lien on Ingleman's personal property because the form of notice used did not comply with the technical requirements of the Texas Property Code, specifically §§ 12.001 and 12.0011. Plaintiff's Post-Hearing Brief [Dkt. 19] at ¶¶ 62-63.  As correctly argued by the U.S., however, the Lien Notice does not need to comply with Texas state filing requirements, other than with respect to the location of the filing, as it is well-settled that federal, not state, law governs the filing requirements, form, and content of IRS tax-lien notices.  *See U.S. v. Union Cent. Life Ins. Co.,* 368 U.S. 291, 294 (1961) (holding that federal statute requiring that notice of federal tax lien be filed in state office, when state authoritatively designates office for that purpose, does not permit state to prescribe form or contents of that notice); *Hanafy v. U.S.*, 991 F.Supp. 794, 800 (N.D. Tex. 1998) (holding that, once IRS complies with § 6323(f)(1)(A), it is properly perfected

notwithstanding other state law filing requirements). Indeed, IRC § 6323(f) provides that the form and content of a notice of federal tax lien shall be prescribed by the Secretary of the Treasury, and such notice "shall be valid notwithstanding any other provision of law" to the contrary. 26 U.S.C. § 6323(f)(3). Accordingly, the Court concludes that the U.S. holds a lien against all of Ingleman's personal property interests that was properly perfected upon the U.S. filing the Lien Notice with the Dallas County Clerk's Office on March 25, 2002. *See* US. App. 00001-00002 [Dkt. 21-1].

   iii. <u>The U.S. Executed on its Lien Via the Garnishment Action.</u>

Restitution orders are to be enforced by the government using all of the remedies that are available for the collection of criminal fines. 18 U.S.C. § 3664(m)(1)(A)(i); *see also U.S. v. Phillips*, 303 F.3d 548, 550-51 (5th Cir. 2002) ("The MVRA provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means."). To execute on the Restitution Lien, the U.S. filed its Application for Writ of Garnishment on May 22, 2012, which resulted in entry of the Final Order of Garnishment on March 7, 2013.

The parties disagree regarding the effect that entry of the Final Order of Garnishment has on the Garnished Funds. As reflected in its pre-Hearing brief, the U.S. appeared to initially view the Restitution Lien as a garnishment lien obtained under 28 U.S.C. § 3205 (the "**Federal Garnishment Statute**"). United States of America's Brief in Support of Motion to Dismiss [Dkt. 9] at 4-7. Indeed, the U.S. analogized the Restitution Lien to a "self-executing" garnishment lien obtained under Colorado state law,[6] arguing that the Restitution Lien attached upon entry of the Criminal Judgment, was perfected on September 28, 2012 when the U.S.

---

[6] The U.S., however, cites to no case law that interprets the Federal Garnishment Statute in this manner.

served Writs of Garnishment on Chase and RJFS, and was fully executed upon entry of the Final Order of Garnishment. *Id.* at 5-6.  At the Hearing, the Court inquired whether the U.S. had perfected its lien as specified in 18 U.S.C. 3613(d) (by filing a notice of lien in the manner in which a notice of tax lien would be filed) or whether its only basis for alleging perfection was the garnishment proceeding.  In response, the U.S. filed with the Court the previously unfiled Lien Notice, U.S. App. 00001-00004 [Dkt. 21-1], and amended its argument to address perfection via 18 U.S.C. § 3613(d).  United States of America's Brief in Response to Hearing Held August 21, 2013 [Dkt. 20] at 5-8.  In its post-Hearing brief, the U.S. argues that the Restitution Lien attached upon entry of the Criminal Judgment in January 2002, and the lien was perfected upon the filing of the Lien Notice in March 2002.  *Id.*  Moreover, the U.S. now contends that the Restitution Lien is *not* self-executing; however, the U.S. fully executed upon its lien as evidenced by the Final Order of Garnishment.  *Id.* at 8.

On the other hand, Gidner first analogized the Federal Garnishment Statute to the Texas garnishment statute, arguing that, like Texas, the Federal Garnishment Statute contains no language making it self-executing and, as such, affirmative action is required *after* entry of a garnishment order to execute upon a garnishment lien.[7]  Brief in Support of Plaintiff's Response to Defendant's Motion to Dismiss [Dkt. 18] at ¶¶ 17-23.  In his post-Hearing brief, Gidner alters his approach to the issue and argues, without any supporting case law, that:

> At the Hearing, the parties argued the extremes. The United States argued that the federal garnishment statute was similar to the Colorado garnishment statute, which explicitly notes that it is self-executing. The Plaintiff argued that the federal garnishment statute was more akin to the Texas garnishment statute, which requires further action under Texas law, including the issuance of and levy pursuant to a writ of execution.

---

[7] Gidner, however, cites to no case law that interprets the Federal Garnishment Statute in this manner.

> The better result may very well be one between the two extremes. Plaintiff would urge that title does not pass at least until some action on the part of the garnishee – namely the transfer of the garnished assets to the garnishor. Such a result would make it more consistent with typical title passage rules with respect to the transfer of personal property.

Plaintiff's Post-Hearing Brief at ¶¶ 9-10.  The Court does not find Gidner's argument on this point persuasive.

The U.S. is authorized to enforce a restitution order imposed as part of a criminal sentence by using its powers under the Federal Debt Collection Procedures Act, s*ee* 18 U.S.C. § 3664(m)(1)(A); 18 U.S.C. § 3613(a), (f), including via the Federal Garnishment Statute.  Under the Federal Garnishment Statute, after the garnishee files an answer, and if no hearing is requested within the required time, "the court shall promptly enter an order directing the garnishee as to the disposition of the judgment debtor's nonexempt interest in such property."  28 U.S.C. § 3205(c)(7).  Although the garnishee may still hold possession of the funds upon entry of a final order of garnishment, the debtor has no continuing ownership rights in the garnished funds.  *In re Alexander*, 2010 WL 7892453 (Bankr. D. Alaska, April 16, 2010) (unpublished opinion) (entry of final order of garnishment in execution of restitution lien divested debtor of any interest in garnished funds); *see also In re Smiley*, 189 B.R. 338, 340-41 (Bankr. E.D. Pa. 1995) (postpetition demand by IRS that bank turnover account funds did not violate automatic stay because IRS's prepetition levy on funds divested debtor of any remaining property interest).

The Final Order of Garnishment States:

> THIS COURT ORDERS that Chase shall pay the United States[8] within 15 days from the date of this final order the property it has in its possession, custody, or control belonging to or due Ingleman and/or Gidner, including property coming into Chase's possession, custody, or control from the date it was served with the writ, up to the amount of the debt owed by Ingleman. Specifically, Chase shall

---

[8] The garnishees were directed to pay the amounts via certified checks payable and mailed to the District Court.

pay the United States within 15 days all funds held in Checking Account No. –4533 identified in its answer.

THIS COURT ORDERS that Raymond James and Raymond James Financial Services, Inc. shall pay to the United States within 15 days from the date of this final order one-half of the value of the property they have in their possession, custody, or control belonging to or due Ingleman and/or Gidner, including property coming into Raymond James and Raymond James Financial Services, Inc.'s possession, custody, or control from the date Raymond James was served with the writ, up to the amount of the debt owed by Ingleman. Specifically, Raymond James and Raymond James Financial Services, Inc. shall liquidate to the extent necessary and pay to the United States within 15 days one-half of IRA –8280, IRA –3008, and Retail Brokerage Account –1329 identified in its answer less any necessary tax withholding.

Final Order of Garnishment [Dkt. 10-1] at 2-3. By its express terms, the Final Order of Garnishment is the disposition order contemplated by 28 U.S.C. § 3205(c)(7). Pursuant to the statute, once the Final Order of Garnishment was entered, there was no further action the U.S. was required to take to execute upon the Restitution Lien. *See* 28 U.S.C. § 3205 (detailing the statutory garnishment procedure). Accordingly, the Court concludes that Gidner was divested of his interest in the Garnished Funds upon entry of the Final Order of Garnishment, and no portion of the Garnished Funds became property of the Gidner bankruptcy estate.

### B. Does Claim Preclusion Prevent Gidner from Arguing that the Garnished Funds Were his Separate Property?

Pursuant to the Federal Garnishment Statute, "[c]o-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." 28 U.S.C. § 3205(a). The Fifth Circuit has held that a criminal restitution lien attaches to community property defined under Texas state law in the following manner: (1) all of the judgment debtor's sole-managed community property; (2) all of the couple's joint-managed community property, including the non-judgment debtor spouse's undivided one-half interest in the couple's joint-managed community property; and (3) one-half

of the non-debtor's sole-management community property. *U.S. v. Loftis*, 607 F.3d 173, 178-79 (5th Cir. 2010); *U.S. v. Tisdale*, 2013 WL 4804286, *5 (N.D. Tex. Sept. 9, 2013). Although sole management community property is ordinarily beyond the reach of a spouse's creditors for non-tortious liabilities incurred during marriage, Tex. Fam. Code § 3.202(b), this exemption does not apply to criminal restitution liens. *Loftis*, 607 F.3d at 179; *Tisdale*, 2013 WL 4804286, at *5.

The Final Order of Garnishment ordered that (1) Chase pay to the U.S. all funds held in Chase Checking Account No. X4533, and (2) that RJFS and James Financial Services, Inc. liquidate to the extent necessary and pay to the U.S. one-half of IRA Acct. No. X8280, one-half of IRA Acct. No. X3008, and one-half of Retail Brokerage Acct. No. X1329. Final Order of Garnishment [Dkt. 10-1] at 2-3. Although the Final Order of Garnishment did not expressly address the characterization of the Garnished Funds, Fifth Circuit precedent leads this Court to conclude that the District Court implicitly found that the Raymond James accounts were Gidner's sole managed community property, the Chase checking account was community property that was not solely managed by Gidner, and none of the accounts were Gidner's separate property. *See Loftis*, 607 F.3d at 178-79; *Tisdale*, 213 WL 4804286, at *5.

In his post-Hearing brief, however, Gidner argues that the terms of both the Writs of Garnishment and the Final Order of Garnishment impermissibly covered both the couple's community property and Gidner's separate property.[9] Because the District Court made no

---

[9] *See* Plaintiff's Post-Hearing Brief [Dkt. 19] at ¶¶ 3 – 4:

Indeed, the Initial Writ of Garnishment is to be applied to property "belonging to … Ingleman … **and/or her spouse,** John David Gidner, held by Garnishee" (emphasis added). The Initial Writ of Garnishment, therefore, clearly contemplates the possibility that Plaintiff's separate property could be garnished, which is exactly what Plaintiff asserts occurred.

Similarly, the Final Order of Garnishment orders Chase to pay within 15 days "the property it has in its possession, custody, or control belonging to or due Ingleman and/or Gidner . . ." Once again, on its face, the Final Order of Garnishment makes no distinction between community property and separate property. Like the Initial Writ of Garnishment, the Final Order of Garnishment contemplates the possibility that Plaintiff's separate property could be garnished.").

express findings regarding the character of the Garnished Funds, Gidner argues that res judicata[10] is not applicable to this proceeding and this Court may properly determine whether the Garnished Funds are community or separate property. This Court disagrees, as explained below.

The doctrine of res judicata embraces two distinct preclusion concepts: claim preclusion (also referred to as "res judicata") and issue preclusion (also referred to as "collateral estoppel"). *U.S. v. Shanbaum,* 10 F.3d 305, 310 (5th Cir. 1994). Claim preclusion is a legal canon that ensures the finality of judgments and thereby conserves judicial resources. *Id.* Claim preclusion is appropriate if four conditions are met: (1) the parties in the later action must be identical to (or at least be in privity with) the parties in a prior action; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same cause of action must be involved in both suits. *Id.*; *Southmark Props. v. Charles Hours Corp.*, 742 F.2d 862, 869 (5th Cir. 1984). "If these conditions are satisfied, claim preclusion prohibits either party from raising any claim or defense in the later action that was *or could have been* raised in support of or in opposition to the cause of action asserted in the prior action." *Shanbaum*, 10 F.3d at 310 (citations omitted) (emphasis in original).

Gidner does not dispute that the first two elements are met here. Plaintiff's Post-Hearing Brief [Dkt. 19] at ¶ 32. Gidner does, however, argue that the third and fourth elements are not met because the District Court refused his hearing request, so he was never afforded an opportunity to present evidence on the characterization of the Garnished Funds. *Id.* at ¶¶ 35-38. Gidner further argues that, because he was unable to present his arguments, the issue as to

---

[10] Gidner argues that each of law of the case, claim preclusion, and issue preclusion are inapplicable to the facts at hand. Because the Court concludes that the elements of claim preclusion have been met, this Memorandum Opinion and Order will not address law of the case or issue preclusion.

ownership of the Garnished Funds was never presented to the District Court, so the Final Order of Garnishment cannot be a judgment on the merits as to that issue. *Id.* at ¶ 33.[11]

When determining whether the same cause of action was involved in both suits, the Fifth Circuit applies the transactional test of § 24 of the Restatement (Second) of Judgments. *In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010). "The critical issue under this determination is whether the two actions under consideration are based on 'the same nucleus of operative facts' rather than the type of relief requested, substantive theories advanced, or types of rights asserted." *Id.* (citations omitted).

"Making a determination of whether the same nucleus of operative facts is present" revolves around "the factual predicate of the claims asserted." *Id.*; *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007). Therefore, the type of relief requested, substantive theories advanced, or types of rights asserted is not controlling for purposes of the transactional test. *Paige,* 610 F.3d at 873 (*citing U.S. v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)). This is true even where "several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability ...." *Paige*, 610 F.3d at 873 (citing Restatement (Second) of Judgments § 24 cmt. c (1982)); *see also Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.,* 20 F.3d 663, 665 (5th Cir. 1994) ("The substantive theories advanced, forms of relief requested, types of rights asserted, and variations in evidence needed do not inform this inquiry.").

Further,

---

[11] Gidner's argument appears to meld the third and fourth factors. The Final Order of Garnishment is a final order for purposes of appeal. *U.S. v. Phillips*, 303 F.3d 548, 550 (5th Cir. 2002). Further, as discussed in more detail below, that a judgment be "on the merits" does not require that a claim be actually heard and considered by the court, as waiver plays a material role in the doctrine of claim preclusion. *See, e.g., Republic Supply Co v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir. 1987) ("Although the question of the release of Shoaf's guaranty was not actually litigated, the bankruptcy court, applying bankruptcy law, confirmed the Plan and disposed of Shoaf's liability on the guaranty in an order that was final and appealable. It was therefore a final judgment on the merits.").

> One motivating principle behind claim preclusion is waiver. If a party does not raise a claim or a defense in the prior action, that party thereby waives its right to raise that claim or defense in the subsequent action. As we have previously put it: "[T]he effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial."

*Shanbaum*, 10 F.3d at 310-11 (citations omitted). Finally, an express factual finding is not required to invoke claim preclusion. *In re Interlogic Trace*, 200 F.3d 382, 387 (5th Cir. 2000) (implied finding sufficient to bar subsequent claim on basis of claim preclusion).

Against this background, the Fifth Circuit held in *Interlogic Trace,* for example, that Interlogic's malpractice action against its former Chapter 11 consultant, Ernst & Young LLP ("**E&Y**"), was barred by claim preclusion. *Interlogic Trace,* 200 F.3d at 385–86, 391. The Fifth Circuit found that the accounting services E&Y had previously provided to Interlogic's estate constituted the "central transaction." *Id*. at 387. Those accounting services were the subject of E&Y's earlier fee application. *Id.* Consequently, the bankruptcy court's granting of the fee application, without objection from the estate's trustee, constituted a final judgment on the merits for claim preclusion purposes: "[b]y granting Ernst & Young's fee application, the bankruptcy court implied a finding of quality and value in Ernst & Young's services and that the Trustee's [malpractice] claims ... ar[o]se from Ernst & Young's alleged omissions in rendering the very same services considered by the bankruptcy court in the fee application hearing." *Id*.

Analogously, whether the Garnished Funds could, in fact, be garnished under Texas law was a "central transaction" to the garnishment action before the District Court. To reach its decision to order payment, the District Court necessarily determined the character of the Garnished Funds. This implied finding is reflected in the fact that the Final Order of Garnishment directed varying percentages of accounts be paid to the U.S., versus ordering payment of 100% of all funds held by each garnishee. The District Court's implied finding

regarding the character of the Garnished Funds is fundamental to the Final Order of Garnishment, as payment of the Garnished Funds could not be properly directed without it. That the Final Order of Garnishment and Order Denying New Trial are under appeal does not deprive such orders of res judicata effect. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) ("a case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal"). As such, the Court concludes that the garnishment action and the Complaint are based on the same nucleus of operative facts.

The inquiry, however, does not end here. This Court must also determine whether the previously unlitigated claim of ownership "could or should have been asserted in the prior proceeding." *Interlogic Trace*, 200 F.3d at 388 (*quoting In re Howe*, 913 F.2d 1138, 1146 n.28 (5th Cir. 1990)); *D–1 Enters., Inc. v. Commercial State Bank,* 864 F.2d 36, 38 (5th Cir. 1989) ("Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim could or should have been brought in the earlier litigation."). Only if this Court determines that Gidner's alleged ownership of the Garnished Funds, as asserted in the Complaint, could and should have been asserted in the earlier garnishment proceeding are Gidner's claims barred by claim preclusion. *See Interlogic Trace,* 200 F.3d at 388. For this determination, the Court engages in a two-step analysis: (1) whether and to what extent Gidner had actual or imputed awareness prior to the garnishment proceeding of his alleged ownership claim in the Garnished Funds, and (2) whether the District Court possessed procedural mechanisms that would have allowed Gidner to assert such claims. *See Interlogic Trace*, 200 F.3d at 388; *Paige,* 610 F.3d at 873-74.

As shown by the District Court record, and reflected in his arguments to this Court, Gidner was clearly aware during the garnishment proceeding of his claim that the Garnished

Funds were his separate property.  *See* Intervenor Jon Gidner's Objection to the Writ of Garnishment and Request for Hearing [Dkt. 19-5] at ¶ 2 ("John Gidner objects to the Writs of Garnishment because the funds held by Garnishees are separate property under the Texas Constitution and John Gidner owes no debt or obligation to the United States.").  Further, the District Court clearly possessed the procedural mechanism that would have permitted Gidner to assert his alleged ownership rights, had he chosen to properly follow such procedures.  *See* 28 U.S.C. § 3205; Order Denying New Trial [Dkt. 19-2] at 6-7 ("Accordingly, the [District] Court concludes that Movant [Gidner] has not made an objection within the scope of § 3205(c)(5) triggering a mandatory hearing, nor has he complied with the procedural requirements of service on the garnishees.").  The garnishment proceeding and the related statutory procedures and protections would have allowed Gidner to effectively litigate his alleged ownership rights, had he followed the proper procedures.  *Id.*  Accordingly, this Court concludes that all of the requirements of claim preclusion have been met, and the Final Order of Garnishment fully determined the proper legal characterization of the Garnished Funds.[12]

### C.    MAY GIDNER AVOID THE RESTITUTION LIEN AGAINST COMMUNITY PROPERTY?

There are two transfers that may potentially form the basis of the Complaint:  (1) the transfer that occurred upon perfection of the Restitution Lien, and (2) the transfer that occurred upon entry of the Final Order of Garnishment.[13]

---

[12] Because this Court concludes that claim preclusion prevents it from ruling on the legal characterization of the Garnished Funds, this Memorandum Opinion and Order does not address Gidner's lengthy arguments on the topic – most of which relate to the alleged error committed by the District Court in refusing his request for a hearing. Whether or not the District Court was in error in entering the Final Order of Garnishment and Order Denying New Trial are matters currently on appeal to the Fifth Circuit and outside the purview of this Court.

[13] Gidner does not challenge the transfer that occurred upon entry of the Criminal Judgment.

i.      Application of 18 U.S.C. § 3613(e).

As previously noted, the U.S. failed to submit the Lien Notice in is pre-Hearing appendix. Because this piece of the puzzle was missing, the Court inquired at the Hearing whether the U.S. would be entitled to the protections of 18 U.S.C. § 3613(e) in the event that its sole means of perfection of its Restitution Lien was via the garnishment action. In response to the Court's inquiry, the U.S. submitted the Lien Notice in a supplemental appendix, without objection by Gidner, and argued in its post-Hearing brief that the Restitution Lien was entitled to the full protections of 18 U.S.C. § 3613(e), which states:

> Discharge of debt inapplicable.--No discharge of debts in a proceeding pursuant to any chapter of title 11, United States Code, shall discharge liability to pay a fine pursuant to this section, and **a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding**.

18 U.S.C. § 3613(e) (emphasis added).

In response, Gidner argues that § 3613(e) is inapplicable because he is not named in the Criminal Judgment, and, as such, the U.S. does not hold "a lien filed as prescribed by this section" against him personally. Plaintiff's Reply Brief [Dkt. 23] at ¶¶ 28-31. Because of this, Gidner argues that he may avoid the unperfected lien as it relates to all of his property interests, including all community property. *Id.* Gidner further argues that § 3613(e) uses the term "voided in a bankruptcy proceeding"; however, he is seeking to "avoid" the lien, and there "is a stark legal difference" between these two terms. *Id.* at ¶ 31 (citing no supporting authority).

The Court notes that the U.S. does not allege that it holds a lien against Gidner personally or his separate property -- the express terms of the Criminal Judgment and the Restitution Lien cover only Ingleman and her interests in property. An overlap occurs, however, where Ingleman's property interests include interests in community property. The issue then becomes whether 18 U.S.C. §3613(e) prohibits Gidner from avoiding a restitution lien on community

**MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES OF AMERICA'S MOTION TO DISMISS BASED ON FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED        19**

property in his Bankruptcy Case when Ingleman could clearly not do so in a bankruptcy proceeding of her own.

The Court could find no case law analyzing or applying 18 U.S.C. § 3613(e) with respect to community property in this context.    Further, there is no legislative history regarding § 3613(e) that is instructive on this point.

The starting point for resolving a dispute over the meaning of a statute begins with the language of the statute itself.  *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989).  Where statutory language is plain, "the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." *Lamie v. U.S. Tr.,* 540 U.S. 526, 534, 124 S.Ct. 1023 (2004).

The relevant portions of § 3613 are as follows:

(a) Enforcement.--The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law….

(c) Lien.--A fine imposed pursuant to the provisions of subchapter C of chapter 227 of this title, or an order of restitution made pursuant to sections … 3663, 3663A, or 3664 of this title, **is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986**. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b).

(d) Effect of filing notice of lien.--Upon filing of a notice of lien in the manner in which a notice of tax lien would be filed under section 6323(f)(1) and (2) of the Internal Revenue Code of 1986, the lien shall be valid against any purchaser, holder of a security interest, mechanic's lienor or judgment lien creditor…

**(e) Discharge of debt inapplicable.--No discharge of debts in a proceeding pursuant to any chapter of title 11, United States Code, shall discharge liability to pay a fine pursuant to this section, and *a lien filed as prescribed by this section* shall not be voided in a bankruptcy proceeding.**

18 U.S.C. § 3613 (a), (c) – (e) (emphasis added).

Based upon the plain language of § 3613(e), the Court concludes that Gidner may not avoid the Restitution Lien against community property in his Bankruptcy Case. The language of the statute clearly delineates when a provision has a narrow application versus a broad application. *Compare* 18 U.S.C. § 3613(c) ("a lien in favor of the United States on all property and rights to property *of the person fined* as if the liability *of the person fined* were a liability for a tax assessed under the Internal Revenue Code of 1986), *with* § 3613(e) ("a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding"). Subsection (c) states that a restitution lien attaches only to the property and rights to property of the person subject to the criminal judgment. 18 U.S.C. § 3613(c). Subsection (e), however, contains no such limitation, and unequivocally states that "a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding." 18 U.S.C. § 3613(e). Notably, Subsection (e) does not contain the "of the person fined" qualifier that Gidner appears to read into the statute.[14]

As this Court previously concluded, the Restitution Lien was properly perfected as to Ingleman in accordance with 18 U.S.C. § 3613(d). *See* § III.A.ii, *supra.* Thus, this Court further concludes that the Restitution Lien is "a lien filed as prescribed by this section" that, pursuant to the express terms of the statute, may not be avoided by Gidner in his Bankruptcy Case.[15]

---

[14] Indeed, the Court's analysis would be different if the statute read "a lien filed as prescribed by this section shall not be voided in a bankruptcy proceeding *of the person fined.*"

[15] The Court could find no case interpreting Section 3613(e) and its use of the term "void" in comparison to the Bankruptcy Code's use of the term "avoid" in reference to the various Chapter 5 causes of action, nor is the term "void" defined within the statute itself. The difference in nomenclature between the two statutes, however, does not alter this Court's conclusion that Gidner may not avoid the Restitution Lien in his Bankruptcy Case. To conclude otherwise would render the phrase "shall not be voided in a bankruptcy proceeding" meaningless, as the Bankruptcy Code speaks in terms of lien "avoidance." *See, e.g.,* 11 U.S.C. §§ 522(f), 544 – 550.

In the event that the Court's interpretation of 18 U.S.C. § 3613(e) is determined to be in error, the Court also concludes that the Restitution Lien may not be avoided under 11 U.S.C. §§ 522(f) or 544(a)(1), as explained below.

   ii.  <u>Count I – Avoidance Pursuant to 11 U.S.C. § 522(f).</u>

The Bankruptcy Code provides that the commencement of a voluntary bankruptcy case creates an estate comprised of the legal and equitable interests of the debtor in property, wherever located and by whomever held. 11 U.S.C. § 541(a). Generally, an individual debtor may exempt from property of the estate certain types and amounts of property provided for under a list of either federal or state exemptions. 11 U.S.C. § 522(b). A valid lien or security interest on exempt property securing a prepetition debt remains enforceable unless the lien is void or is avoided pursuant to one of a number of avoidance provisions of the Bankruptcy Code. 11 U.S.C. § 522(c).

Section 522(f) of the Bankruptcy Code is one means by which a debtor may attempt to avoid a lien against exempt property. Section 522(f) states, in relevant part, that:

> (f) (1) Notwithstanding any waiver of exemptions …, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (A) a judicial lien….

11 U.S.C. § 522(f)(1). For a debtor to avoid a judicial lien on exempt property, the debtor must show that: (1) the lien is a judicial lien, (2) the lien is fixed against an interest of the debtor in property, and (3) the lien impairs an exemption to which the debtor would otherwise be entitled. *In re Henderson*, 18 F.3d 1305, 1308 (5th Cir. 1994). Stated differently, "[S]ection 522(f) permits a debtor to wipe out the interest that a creditor has in particular property if the debtor's

interest in that property would be exempt but for the existence of the creditor's lien or interest." 4 *Collier on Bankruptcy* §522.11[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The Bankruptcy Code defines the term "judicial lien" as "a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The parties do not dispute that the Restitution Lien is a judicial lien for purposes of 11 U.S.C. § 522(f)(1). In addition to the first factor, however, Gidner must also show that the Restitution Lien impairs an exemption in the Garnished Funds to which he would otherwise be entitled. *See Henderson*, 18 F.3d at 1308. As previously discussed, *see* § III.A.iii, *supra,* prepetition entry of the Final Order of Garnishment divested Gidner of his interest in the Garnished Funds. Because the Garnished Funds did not become property of the Gidner bankruptcy estate pursuant to 11 U.S.C. § 541(a), the Court concludes that Gidner cannot satisfy the second and third requirements and, as such, the Garnished Funds cannot be exempted by Gidner pursuant to 11 U.S.C. § 522(b). Accordingly, the Court grants summary judgment in favor of the U.S. on Count I of the Complaint.

### iii.  Avoidance of an Unperfected Lien Pursuant to 11 U.S.C. § 544.

Although Gidner references 11 U.S.C. § 544 in the Introduction (Section III) of the Complaint and he briefs the statute in his Post-Hearing Brief [Dkt. 19] at Section II.A, Section 544 is not included as a particular Count of the Complaint. As such, it is unclear whether or not Gidner is relying upon Section 544 as a grounds for avoidance.

Section 544 of the Bankruptcy Code provides, in relevant part, that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by – (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all

> property on which a creditor on a simply contract could have obtained such a judicial lien, whether or not such a creditor exists….

11 U.S.C. § 544(a)(1). In a Chapter 11 case, the debtor-in-possession holds the "strong-arm" powers of 11 U.S.C. § 544, *see* 11 U.S.C. § 1107(a), and can avoid any conveyance as a hypothetical lien creditor *if the conveyance is unperfected* on the bankruptcy petition date. *In re Casbeer*, 793 F.2d 1436, 1439 (5th Cir. 1986) (citing 11 U.S.C. § 544).

Because the Restitution Lien was properly perfected upon the filing of the Lien Notice on March 25, 2002, the Court concludes that Gidner may not rely upon 11 U.S.C. § 544 to avoid the Restitution Lien. 11 U.S.C. § 544; *Casbeer*, 793 F.2d at 1439. Gidner does not dispute this point. Plaintiff's Post-Hearing Brief [Dkt. 19] at ¶ 70 ("Plaintiff concedes that, to the extent Defendant's lien is perfected as to its interest in the Property, if any, Plaintiff cannot avoid the lien under the general strong-arm powers of §544 standing alone."). Accordingly, to the extent that the Complaint includes an action under 11 U.S.C. § 544, the Court grants summary judgment in favor of the U.S.

### D. MAY GIDNER AVOID THE TRANSFER THAT OCCURRED UPON ENTRY OF THE FINAL ORDER OF GARNISHMENT?

  i.   Count II – Avoidance of the Transfer Pursuant to 11 U.S.C. § 547.

Section 547(b) provides, in relevant part, that:

[T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

        (A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case was a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).[16]

Gidner filed his bankruptcy case on March 11, 2013; accordingly, only the transfer that occurred upon entry of the Final Order of Garnishment was within the 90-day reach back period. Gidner argues that entry of the Final Order of Garnishment perfected the Restitution Lien and did not divest Gidner of his interest in the Garnished Funds.  As previously explained, however, the Court concludes that the Restitution Lien was validly perfected when the Lien Notice was filed with the Dallas County Clerk's Office on March 25, 2002, a date well outside the reach back period.

As such, the issue is whether the transfer of Gidner's interest in the Garnished Funds that occurred upon entry of the Final Order of Garnishment and during the reach back period is avoidable pursuant to 11 U.S.C. § 547(b).  Specifically, whether Gidner can satisfy the requirement of 11 U.S.C. § 547(b)(5) -- that the transfer to the U.S. enabled it to receive more than it would have received in a hypothetical Chapter 7 case where entry of the Final Order of Garnishment had not occurred.  The Court concludes that Gidner cannot meet this requirement.

---

[16] Only 11 U.S.C. § 547(b)(4) and (5) appear to be contested between the parties.  As such, the Court will not analyze the remaining factors in the Memorandum Opinion and Order.

Because Gidner is unable to avoid the Restitution Lien that was perfected outside the reach back period, the U.S. has a perfected lien in the Garnished Funds. Thus, even if the Final Order of Garnishment had not been entered prepetition, the U.S. would (1) retain its fully perfected lien in the Garnished Funds, and (2) be entitled to receive those funds in a hypothetical Chapter 7 case. Accordingly, the Court grants summary judgment in favor of the U.S. on Count II of the Complaint.

The relief requested in Counts III through V of the Complaint depends upon Gidner prevailing on his Count I and/or II claims. Because Gidner's Count I and II claims fail as a matter of law, for the reasons explained above, the Court also grants summary judgment in favor of the U.S. on Counts III through V of the Complaint.

## IV. CONCLUSION

In summary, for the reasons explained above, the Court concludes that:

(1) The Criminal Judgment granted the U.S. a lien on all of Ingleman's property interests that attached upon its entry on January 16, 2002;

(2) The U.S. perfected the Restitution Lien against Ingleman's property interests when it filed the Lien Notice on March 25, 2002;

(3) The U.S. fully executed on the Restitution Lien upon entry of the Final Order of Garnishment on March 7, 2013;

(4) Gidner was divested of any interest he held in the Garnished Funds upon entry of the Final Order of Garnishment on March 7, 2013;

(5) Because Gidner was divested of any interest he held in the Garnished Funds on March 7, 2013, no portion of the Garnished Funds became property of the Gidner bankruptcy estate when Gidner filed for bankruptcy protection on March 11, 2013;

(6) In accordance with 18 U.S.C. § 3613(e), Gidner may not avoid the Restitution Lien against community property. Alternatively, Gidner may not avoid the Restitution Lien pursuant to either 11 U.S.C. §§ 522(f) or 544(a); and

(7) Because the Restitution Lien was perfected outside the 11 U.S.C. § 547(a)(4) reach back period, Gidner is unable to meet the requirement of 11 U.S.C. § 547(a)(5) and may not avoid the transfer that occurred upon entry of the Final Order of Garnishment.

Accordingly, the Court concludes that the Motion should be granted and summary judgment entered in favor of the U.S. on all live Counts of the Complaint.  The U.S. is hereby directed to prepare a take-nothing judgment that will fully dispose of this adversary proceeding.

SO ORDERED.

# # # END OF MEMORANDUM OPINION AND ORDER # # #